# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of NASATKA BARRIER INCORPORATED d/b/a NASATKA SECURITY,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL FIDELITY INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. CV 16-8064 DSF (AGRx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO PLAINTIFF'S CLAIMS** |
| and RELATED CLAIMS. | |

# INTRODUCTION

This action involves a dispute between Plaintiff United States of America, for the use and benefit of Nasatka Barrier, Inc., d/b/a Nasatka Security (Nasatka), and Third-Party Defendant North American Specialty Insurance Company on the one hand, and Defendants and Cross-claimants International Fidelity Insurance Company, Insight Environmental Engineering & Construction, Inc. (IFIC), Cesight Joint Venture (Cesight), and Everest Re-Insurance Company (Defendants) on the other hand. Nasatka filed suit for breach of contract, recovery under the Miller Act, and quantum meruit on February 19, 2016. This action was tried before the Court from October 16, 2018 to October 18, 2018.

Having heard and reviewed the evidence and having considered the parties' post-trial briefs, the Court makes the following findings of fact and conclusions of law.[1]

# FINDINGS OF FACT

1. CeSight entered into contract Number W912DW-13-C-0024 (the Prime Contract) with the United States Army Corps of Engineers (USACE-Seattle) under Project Name FY2012 Access Control Point Infrastructure Phase I, PN 66206, as the prime contractor for construction at Joint Base Lewis-McChord, WA (the Project). Tr. Ex. 74 (Prime Contract); Tr. Ex. 39 (defining contract as Prime Contract).

---

[1] Any finding of fact deemed to be a conclusion of law is incorporated into the conclusions of law. Any conclusion of law deemed to be a finding of fact is incorporated into the findings of fact. To the extent that findings of fact or conclusions of law in the concurrently filed Findings of fact and Conclusions of law as to Defendants' Counterclaim, Third-Party Counterclaim, and Affirmative Defenses are relevant, they are incorporated into these Findings. Where the Court declined to adopt a fact submitted by a party, the Court found the fact was either unsupported, unnecessary, or irrelevant to its determination.

2. USACE-Seattle was the Prime Contract holder for the Project. Tr. Ex. 74, Bates NASATKA 0000295 (Contract No. W912DW-13-C-0024 issued by Seattle District, Corps of Engineers); Tr. Ex. 39 (Subcontract), Bates NASATKA 0004037 (defining USACE-Seattle as the Client);

3. The contracting authority for the Project was the contracting officer (KO) at the Lewis Resident Office under the USACE, Seattle District. TT at 422:12-424:12; 436:17-25.

4. IFIC and Everest, together with CeSight, as principal, furnished a Miller Act Payment Bond according to 40 U.S.C. § 3131, to ensure payment to subcontractors and suppliers furnishing labor, materials, or both in the prosecution of the work on the Project. Tr. Ex. 141.

5. CeSight subcontracted with co-defendant Insight Environmental Engineering & Construction, Inc. (Insight) to provide steel decking, electrical and exterior improvements, including the Active Vehicle Barrier (AVB) and Passive Vehicle Barrier (PVB) systems. Tr. Ex. 39, Bates NASATKA 0004037; Dk. 117-1 at 3.

6. Insight entered into a $1,121,539.30 subcontract (Subcontract) with Nasatka to provide all labor, material, transportation, equipment, and other facility barriers with full controls, automation and chain link fencing, including the installation of the specified AVB and PVB systems in compliance with USACE-Seattle's Prime Contract specifications. Tr. Ex. 39 (Subcontract).

7. NAS furnished a Performance Bond to Nasatka for the Project.[2]

8. A dispute arose regarding Nasatka's performance on the Project and on February 19, 2016, Nasatka filed suit for breach of contract,

---

[2] This fact was stipulated by the parties. Dkt. 117-1 at 4.

recovery under the Miller Act, and quantum meruit, seeking $1,280,423.69 plus attorney's fees, interest, and penalties for alleged late payment.

9. Nasatka seeks payment of (1) the unpaid contract balance under the Subcontract, (2) costs associated with work performed after it completed the cinch-rampart controller, and (3) unpaid service call invoices. In the alternative, Nasatka seeks equitable relief under quantum meruit.

**A. Nasatka's Subcontract Requirements**

10. The Subcontract incorporates provisions of the Prime Contract that relate in any way to Nasatka's work under the Subcontract, including provisions of the Prime Contract required by law and referenced within the Subcontract. Tr. Ex. 39, Bates NASATKA 004037 (Recitals); id. at Bates NASATKA 0004038, §§ 2.1-2.6 (Incorporation of the Prime Contract).[3]

11. Section 14 of the Subcontract provides, "If any claim or dispute shall arise between [Insight] and [Nasatka] regarding performance of the Work, or any alleged change in the Work, [Nasatka]

---

[3] Nasatka's objections concerning whether the Subcontract incorporates provisions of the Prime Contract are overruled. John Scolaro's witness narrative does not state it is undisputed that Nasatka was not provided the Prime Contract. It says that Nasatka did not receive a copy of the Prime Contract when it signed the Subcontract, and that Nasatka did not receive a copy of the Prime Contract until it asked for a copy from USACE Seattle in April 2015. Dkt. 126-4 (Scolaro Witness Narrative) ¶ 21. Nasatka does not dispute that it agreed to the Subcontract, which expressly references and incorporates the Prime Contract; it is therefore required to adhere to its terms. (Nasatka's lack of diligence in ensuring that it received a copy of the Prime Contract does not mean it is not bound by it, and there are no facts showing that Cesight prevented Nasatka from receiving or reviewing the Prime Contract before it signed the Subcontract.) Nasatka's objection that Cesight failed to enforce the Prime Contract or inform Nasatka that it failed to comply with it is not supported by any reference to the record. Nasatka does not object that the Subcontract is otherwise unenforceable.

shall timely perform the disputed Work and shall give written notice of a request or claim for additional compensation for the disputed Work within ten (10) days after commencement of the disputed Work. [Nasatka's] failure to give written notice within the ten (10) day period constitutes an agreement by [Nasatka] that it will receive no extra compensation for the disputed Work." Id. at Bates NASATKA 0004044.[4]

12. Under Section 15 of the Subcontract, "[Nasatka] shall perform all warranty obligations and responsibilities assumed by [Insight] under the Prime Contract with respect to the Work. All Work not conforming to these requirements may be considered defective. [Nasatka] shall promptly correct any Work rejected by [Insight] as defective or as failing to conform to the Subcontract Documents, whether observed before or after completion, and shall correct any Work found to be defective or nonconforming within a period of one (1) year from the date of completion of the Project. Should [Nasatka] fail to correct any defective Work, [Insight] may perform or cause to be performed the same at [Nasatka's] expense. . . .". Id. at Bates NASATKA 0004045.

13. Insight retained the right to reject Nasatka's Work after completion of the Work if it did not conform to the Prime Contract. See id.

14. Section 23.4 of the Subcontract permits Insight to offset any claims for any amount due to Insight, including without limitation, an amount resulting from the expense of completing the Work, together with a reasonable charge for awarding and administering any subcontract, any damages caused by delays in completing the Work, and

---

[4] Nasatka's objection on the grounds that this provision is waived is overruled. Exhibit 192 does not support this contention and neither does Scolaro's cited testimony.

any amounts resulting from Insight repairing or causing to be repaired any deficiency in the Work attributable to Nasatka. Id.

15. Exhibit B to the Subcontract sets forth the Statement of Work, which obligated Nasatka to comply with all General Requirements and the Project Specifications, including without limitation: Specifications 01 32 01, governing Project Schedule; 01 33 00, governing Submittal Procedures; 01 45 01, governing Contractor Quality Control; 01 45 01.10, governing Quality Control System; 01 78 00, governing Closeout Submittals; 01 78 23, governing Operation and Maintenance Data; and 34 41 26.00 10, governing Access Control Point Control System (ACPCS). Id., Ex. B, at Bates NASATKA 0004051.

16. Pursuant to Exhibit B of the Subcontract, Nasatka's work included the installation of the Access Control Point Control System (ACPCS) as identified in the Prime Contract's Projection Specifications under Division 34, Transportation, Section 34 41 26.00 10, Part 1:

> Furnish and install a complete, integrated, and functional ACPCS for the Access Control Point including active vehicle barriers, active vehicle barrier controls, traffic signals, traffic signal controls, traffic warning signals, traffic signs and pavement markings, wrong-way detectors, vehicle presence detectors, Sequence of Events Recorder, data transmission, and all interconnecting conduit and wiring.

Id. at Bates NASATKA 0004051 (listing Division 34, Transportation, Section 34 41 26.00 10, Part 1).

17. Exhibit B also contained additional requirements and conditions, including without limitation, items (J)(17) requiring

compliance with the Project Schedule, (J)(18) requiring "[a]ll materials to be used by this subcontractor shall be as per specification section," and (J)(19) requiring "[a]ll materials shall be installed per the manufacturers recommendations and specifications." Id. at Bates NASATKA 000453.

18. Cesight assigned Anthony Goveas as Quality Control Systems Manager and Quality Control Manager to ensure Nasatka's compliance including, without limitation, review of submittals, inspection of materials, installation of materials, all performance and testing and reporting to USACE-Seattle District, Joint Base Lewis-McChord (JBLM) DWP, The Army Garrison, and the Department of Emergency Services (DES). TT at 418:8-423:9; Tr. Ex. 56 (Project Specifications).

19. Variations from the Prime Contract's specifications required the KO's approval. Tr. Ex. 56, Bates NASATKA008596, Section 01 33 00, subsection 1.9.

20. Prior to any work being started, all submittals with a "G" designation required approval by the KO. Id. at Bates NASATKA 0085894, subsections 1.3; 1.12.

21. A designation following the "G" designation identified the government office charged with reviewing the submittal for USACE-Seattle. Id.

22. USACE-Omaha functioned as the Government Designer of Record (GDOR) on the Project, performing review of certain submittals. TT at 433:18-25; see e.g., Tr. Ex. 56, Bates NASATKA 0003901-0003905.

23. USACE-Omaha functioned as the reviewer of the Factory Acceptance Test Plan for USACE-Seattle. Id. at Bates NASATKA 0003904.

7

24. USACE-Omaha did not have ultimate approval authority over Nasatka's work on the Project and was subject to being overruled by the KO. Id.

25. Under the Project Specifications, the approval of submittals does not relieve the contractor from complying with all the requirements of the Prime Contract and approval does not represent acceptance by the KO. Tr. Ex. 56, Bates NASATKA0085898, Section 01 33 00, subsection 1.13; TT at 445:13-23.

26. As between the KO at USACE-Seattle and the GDOR at USACE-Omaha, the KO has final approval authority of Project submittals and work. Tr. Ex. 56, Bates NASATKA 0085898, Section 01 33 00, subsections 1.11-1.13; TT at 436:17-437:14; Seawell Narrative ¶ 9.

27. The Project Specifications required Nasatka to complete a PLC based ACPCS: "The ACPCS processor shall consist of a combination of controllers to include a Traffic Controller Unit (TCU), programmable logic controller (PLC) and other controllers or shall just be PLCs and other controllers." Tr. Ex. 56, Bates NASATKA 0003916, Section 34 41 26.00 10, subsection 2.2.

28. The ACPCS was a critical component of the Project. TT at 425:10-426:11.

29. Nasatka's submittals presented a non-compliant cinch-rampart controller rather than a PLC based controller. Tr. Exs. 74, 86, 88, 127; TT at 476:7-478:14.

30. Nasatka did not introduce any evidence at trial that USACE-Seattle approved the cinch-rampart controller before or after completion.

8

31. On August 12, 2014, Insight issued Nasatka a Notice and Demand to Cure Default (Cure Notice) as a result of Nasatka's failure to perform. Tr. Ex. 300.

32. On August 21, 2014, USACE-Seattle concluded that the cinch-rampart controller did not comply with the ACPCS Specifications and called a meeting with CeSight, Insight, and Nasatka to address Nasatka's failure to comply with the Prime Contract specifications. Tr. Ex. 350; TT at 154:12-21.

33. The August 21, 2014, Meeting Minutes document that Nasatka acknowledged that the cinch-rampart controller could not meet the requirements of the Prime Contract with the current hardware, software, and control system as submitted. Tr. Ex. 350.

34. At the August 21, 2014, meeting, there was consensus that Nasatka must utilize other vendors to provide a compliant PLC system. Id.

35. The parties stipulate that Nasatka materially performed its requirements under the Subcontract in February 2015 and USACE-Seattle accepted Nasatka's work. Dkt. 117-1 at 4.

36. USACE-Seattle compensated Cesight/Insight for Nasatka's work on the Project. Id.

37. On May 17, 2015, Nasatka submitted an untimely claim for compensation for costs expended to remove and replace the nonconforming cinch-rampart controller with the conforming PLC controller. Tr. Ex. 39, Bates NASATKA 0004044, Section 14; Tr. Ex. 254.

38. Nasatka's claim was rejected by Insight because Nasatka had failed to comply with the express requirements of the Prime Contract and Subcontract: namely, that because the PLC controller was originally

required under the Project specifications, the Subcontract clearly required Nasatka to bear the cost of correcting its defective/non-compliant work. Tr. Ex. 39, Bates NASATKA 0004045, Section 15.

39. Defendants did not pay Nasatka the unpaid Subcontract balance despite Nasatka's work being accepted by USACE-Seattle. Dkt. 117-1 at 4.

40. Nasatka's Work on the Project was warranted for two years. Tr. Ex. 53, Bates NASATKA 0101098; TT at 162:9-19.

41. The warranty period began March 1, 2015. Tr. Ex. 53, Bates NASATKA 0101098; Dkt. 126-3 (Rojas Narrative) ¶ 64.

42. The warranty was "limited to supply without charge, part components necessary to correct operation and from failure of operation by ordinary use against defects due to faulty manufacturer material or workmanship of the furnished Nasatka barrier system." Tr. Ex. 53, Bates NASATKA 0101098.

43. Following substantial competition, Nasatka performed all required quarterly maintenance as required by the Project Specifications. Rojas Narrative, ¶¶ 63-71; Tr. Ex. 56, Bates NASATKA 0087456, Section 34 41 10, subsection 1.8.3; Tr. Exs. 260 and 262.

44. Nasatka provided service calls related to its work on the Project following substantial completion. Rojas Narrative, ¶¶ 67; Tr. Exs. 20, 21, 63, 64, 78, 157, 158, 159, 160, 225, 261, 262.

45. The service calls related to drains that were not properly maintained as directed by Nasatka. Rojas Narrative ¶¶ 68-71; Tr. Ex. 78, Bates Army_Prod-0132758; Tr. Ex. 155 (Nasatka's Operations & Training Manual).

46. Nasatka sent Defendants an invoice for $11,162.50 for service calls not covered under Nasatka's warranty, which Defendants did not pay. Tr. Ex. 181 (service invoice); Rojas Narrative ¶¶ 68-71.

47. Defendants did not introduce evidence of damages at trial. See Dkt. 142 (Second Amended Exhibit List identifying exhibits admitted into evidence); Dkt. 158 (Partial Judgment Order).

## CONCLUSIONS OF LAW

48. This Court has jurisdiction over the parties and the subject matter of this litigation. 28 U.S.C. § 1331; 40 U.S.C. § 3133(b)(1); 28 U.S.C. § 1332.

49. This district is the proper venue for this litigation.

50. The Court finds in favor of Nasatka on its claims for the unpaid Subcontract balance and unpaid service calls, but against Nasatka on its claims for costs associated with replacing the cinch-rampart ACPCS with a PLC-based ACPCS.

51. In order to prevail on a breach of contract claim, Nasatka must prove: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).

52. To prove its claim for violation of the Miller Act, Nasatka must prove: (1) Nasatka supplied labor or materials in prosecution of the work provided for in the contract; (2) payment has not been made; (3) there is a good faith belief that the materials were intended for the specified work; and (4) the jurisdictional requisites of timely notice and filing were satisfied. 40 U.S.C. § 3133; United States ex rel. Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters., Ltd., 74 F.3d 972, 975 (9th Cir. 1996).

53. The parties stipulate that Nasatka performed its obligations under the Subcontract in February 2015 and that USACE-Seattle paid Cesight/Insight for Nasatka's work under the Subcontract.

54. The parties stipulate that Nasatka did not receive the full Subcontract balance for its work on the Project.

55. Nasatka therefore has proved its breach of contract claim and Miller Act claim for the unpaid Subcontract balance of $433,737.15.

56. Nasatka proved that it provided service calls in the amount of $11,162.50 that were not covered under warranty.

57. Nasatka therefore has proved its breach of contract claim and Miller Act claim for the unpaid service calls.[5]

58. Under the terms of the Subcontract and Prime Contract, Nasatka bears the costs associated with remedying its work to comply with the Project's Specifications.

59. Because Nasatka failed to comply with the Prime Contract's Project Specifications when it built the noncompliant cinch-rampart controller, it cannot recover for the costs expended to make its Work compliant with the Project's Specifications.

60. Nasatka's breach of contract claim and Miller Act claim fail to the extent those claims seek recovery beyond the unpaid Subcontract balance other than for service calls.

61. Nasatka's quantum meruit claim for recovery of costs associated with remedying its work to comply with the Project's Specifications also fails.

---

[5] Because Nasatka succeeds on its breach of contract claim and Miller Act claim for the unpaid Subcontract balance, the Court does not address quantum meruit.

# CONCLUSION

62. Judgment shall be entered in favor of Nasatka and against Defendants on Nasatka's breach of contract claim and Miller Act claim for the unpaid Subcontract balance and service calls.

Date: September 4, 2019

_____
Dale S. Fischer
United States District Judge